# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHANIE E., | ) |
|         PLAINTIFF, | ) |
| vs. | ) CASE NO. 18-CV-492-FHM |
| Andrew M. Saul,[1] Commissioner of Social Security, | ) |
|         Defendant. | ) |

## OPINION AND ORDER

Plaintiff, Stephanie E., seeks judicial review of a decision of the Commissioner of the Social Security Administration denying disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th

---

[1] Effective June 17, 2019, Andrew M. Saul is the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul should be substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff Stephanie E.'s application was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) Lantz McClain was held January 13, 2017. A supplemental hearing was held on July 10, 2017. By decision dated October 4, 2017, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on July 28, 2018. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 40 years old on the alleged date of onset of disability and 43 on the date of the denial decision. Plaintiff has a Bachelor's Degree in Psychology, [R. 41], and her past work experience includes a veterans' service representative. [R. 55]. Plaintiff claims to have become disabled as of September 24, 2014[3] due to vestibular migraines, Hashimoto's disease, degenerative disc disease, and bulging discs in lower back. [R. 43].

## The ALJ's Decision

The ALJ found that Plaintiff has severe impairments relating to Hashimoto's thyroiditis, fibromyalgia, sleep apnea, and obesity. Non-severe impairments include asthma, status post surgery for thoracic outlet syndrome, and history of migraine headaches. [R. 17]. The ALJ determined that Plaintiff has the residual functional capacity

---

[3] Plaintiff amended her onset date from April 9, 2014 to September 24, 2014. [R. 39].

2

to perform sedentary exertional work as she is able to lift and/or carry ten pounds occasionally and up to ten pounds frequently. Plaintiff is able to stand and/or walk at least two hours in an eight-hour workday and sit at least six hours in an eight-hour workday. Plaintiff should avoid hazards such as heights, open machinery, ladders, or scaffolds. Plaintiff should not drive as part of work. Plaintiff is able to perform work requiring occasional balancing, stooping and kneeling, however, should avoid work above the shoulder. [R. 19]. The ALJ determined at step four that Plaintiff could perform her past relevant work as a veterans' service representative. Further, based on the testimony of the vocational expert, the ALJ determined at step five that there are a significant number of jobs in the national economy that Plaintiff could perform. [R. 26-27]. The case was thus decided at step four of the five-step evaluative sequence for determining whether a claimant is disabled with an alternative step five finding. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that the ALJ: 1) failed to properly consider Plaintiff's allegations; 2) finding that Plaintiff's migraines did not equal Listing 11.02 is not supported by substantial evidence; 3) failed to properly consider the medical opinions; and 4) RFC assessment is not supported by substantial evidence. [Dkt. 13, p. 4].

## Analysis

### Plaintiff's Allegations

Plaintiff argues that the ALJ did not properly consider her subjective complaints and symptoms concerning migraine headaches. [Dkt. 13, p. 4-8]. Plaintiff contends that when

3

evaluating the impact of her allegations, the ALJ only considered the objective evidence. [Dkt. 13, p. 5]. The ALJ must also consider other evidence including activities of daily living, location of pain, aggravating factors, medication, and treatment. See 20 C.F.R. § 404.1529(c)(3). [Dkt. 13, p. 6]. The ALJ did not discuss any of the emergency room visits made because of headaches, [R. 470, 474, 478, 482, 487, 491], the various medications used to treat Plaintiff's migraines, or her frequent and consistent complaints of migraines. Further, Plaintiff's activities were not inconsistent with her allegations. [Dkt. 13, p. 6].

Although the Social Security Administration has eliminated the use of the term "credibility" from the agency's sub-regulatory policy, the agency continues to evaluate a disability claimant's symptoms using a two-step process: First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . . Soc. Sec. Ruling (*SSR*) 16-3p; Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 at 2 (Mar. 16, 2016) (superseding *SSR* 96-7p; Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996)). The two-step process substantially restates the prior two-step process set forth in SSR 96-7, which was characterized by the Tenth Circuit as a three-step process set forth in *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987), the seminal case regarding credibility followed in the Tenth Circuit. See, e.g., *Keyes-Zachary*

*v. Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012).

At step one of the process, "[a]n individual's symptoms, . . . will not be found to affect the ability to perform work-related activities for an adult . . . unless medical signs or laboratory findings show a medically determinable impairment is present." *Id.* at 3. At step two, the ALJ may consider, among other things, a number of factors in assessing a claimant's credibility, including the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks and citations omitted); see 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). The court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler*, 68 F.3d at 391). However, credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (citations omitted).

At step two, the ALJ found Plaintiff's migraine headaches were non-severe as she could not be regarded as a reliable historian. [R. 18]. The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical evidence. [R. 20]. Addressing the contradiction between the medical evidence and Plaintiff's claims the ALJ stated:

> "This case rests largely upon the claimant's subjective complaints rather than any objectively verifiable conditions. Under these circumstances, the reliability of claimant's self-

> reports become crucial. Unfortunately, it cannot be concluded that her reports are reliable. Several times, the claimant reported symptoms that are verifiable by objective tests and the objective tests then ruled out any cause which would lead to such symptoms. On May 20, 2014, she stated that for the last five months she had had numbness in her arms and legs. She was using a cane for walking. However, her neurological examination was within normal limits (Exhibit 1F page 10). Dr. Goldman suspected possible multiple sclerosis and sent her for an MRI. This ruled out multiple sclerosis. In addition, cervical and lumbar MRI showed only minor problems. She reported an EMG by another doctor was also normal (Exhibit 1F pages 10-18). Dr. Goldman thought the only chance of some relief would be weight loss (Exhibit 1F page 19). Later, she complained to Dr. Husain of back pain and numbness, and tingling on all extremities. However, an EMG completed July 15, 2015 was a normal study (Exhibit 7F page 2). She cannot, therefore, be regarded as a reliable history."

[R. 25].

The ALJ thoroughly discussed the medical record including Plaintiff's numerous complaints of headaches and prescribed medications[4]. In October 2016 Plaintiff complained of no energy; being sleepy all the time; poor sleep; gaining weight; losing hair; and brittle nails. However, Plaintiff's physical examination was normal. The ALJ also noted Plaintiff's largely normal physical examinations; neurological examinations were within normal limits; reflexes were symmetrical and equal; no pathological reflexes; and Romberg test was negative. An EMG performed on July 15, 2015 and the EEG performed in January 2017 were normal. Plaintiff's mood, memory, affect, and judgment were normal; and lab results were unremarkable. [R. 21-26]. In August 2016 Plaintiff reported that she had dizziness and only got up to prepare food or go to the restroom. Again Plaintiff's

---

[4] The ALJ did not name each medication prescribed to Plaintiff, however, he did note that she was taking "numerous" medications. [R. 21]. In summarizing Dr. Devere's testimony the ALJ specifically noted that Plaintiff was receiving "multiple narcotics." [R. 24].

6

physical examination was normal.  Plaintiff was also walking with a cane despite her neurologist advising her not to use one.  [R. 22, 527].

Plaintiff also argues that the ALJ erred by indicating her "thyroid tests were okay." However, that was the finding of Sailatha P. Thomas, M.D., on October 17, 2016.  [R. 22, 624]. Although the ALJ did not discuss the emergency room records or specifically name the various medications prescribed to Plaintiff, he was not required to do so.  The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.  *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014).  The ALJ complied with this requirement.

The court finds that the ALJ performed an adequate credibility analysis.  The ALJ cited numerous grounds, tied to the evidence, for the credibility finding, including Plaintiff's inconsistent statements with the medical evidence.  [R. 20-25].  The ALJ thus properly linked his credibility finding to the record and the court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

## Listing 11.02

Plaintiff argues that the ALJ erred by failing to find Plaintiff's migraines equaled Listing 11.02.[5]  *See* 20 C.F.R. pt. 404, subpt. P, app.1, § 11.02(B)(2018).  In order to meet

---

[5] Plaintiff's counsel also argued that Plaintiff's condition equaled Listing 11.03.  [Dkt. 13, p. 9; R. 40].  Listing 11.03 was no longer the operative section at the time of the ALJ's decision.  After the ALJ's decision the Social Security Administration combined Listing 11.03, non-convulsive epilepsy, and Listing 11.02, conclusive epilepsy, into 11.02 removing 11.03.  See Revised Medical Criteria for Evaluating Neurological Disorders, 81 FR 43048–01, 2016 WL 3551949, at *43056 (July 1, 2016).

Listing 11.02B (Dyscognitive Seizures) the occurrence must happen at least once a week for at least three consecutive months despite adherence to prescribed treatment. It is Plaintiff's contention that her headache diaries show that her episodes of migraines equals the requirement needed for Listing 11.02B. [Dkt. 13, p. 9; 310-327].

In November 2016, treating physician, Shasi Hussain, M.D., noted that Plaintiff alleged three to four migraines per month. Testing, however, demonstrated a caloric reduced vestibular response of three percent in the left ear – which was within normal limits. From four irrigations, left beating nystagmus was eight percent stronger than the right beating nystagmus. This value for directional preponderance was within normal limits. The saccade occular motor tests showed prolonged latencies which was a central ocular motor finding. The test showed no gaze, spontaneous, or positional nystagmus. The Dix-Hallpike and positional tests for benign paroxysmal positional vertigo was negative bilaterally. Bithermal caloric irrigations produced robust and symmetrical nystagmus. Plaintiff had an abnormal VNG due to prolonged latencies for saccadic testing. Possible central ocular motor finding could not be ruled out. Physical examination showed no abnormality and she was assessed with vestibular migraines. [R. 22-23]. In January 2017, Plaintiff's EEG was normal. [R. 1068]. The visual examination of February 2017 revealed a mostly normal exam with unspecified subjective visual disturbances. [R. 1079].

Plaintiff was treated by neurologist, Yoon-Hee Cha, M.D., on May 19, 2017 for complaints of headaches. After examination, Dr. Cha thought it was possible Plaintiff could have thoracic outlet syndrome. On June 8, 2017 Plaintiff reported approximately ten headaches since May 2017. Plaintiff attended physical therapy but claimed her symptoms worsened for several days after. Dr. Cha did not perform an examination, however, Plaintiff

was scheduled for a chest CT with contrast on June 12, 2017. [R. 23].

Medical expert, Ronald Devere, M.D., testified that there was a possibility of migraines, but the frequency was unclear. Dr. Devere indicated a better history and description of the headaches was needed. A spinal fluid evaluation might be required to eliminate all causes of the headaches. Plaintiff also needed to be treated by a neurologist[6] or headache specialist as she was just receiving narcotic medications which was not the standard of treatment for that length of time. Dr. Devere also indicated that Plaintiff's migraine diary did not provide assistance because it was subjective complaints. [R. 23-24, 66-71].

The ALJ specifically indicated that this case rests largely upon Plaintiff's subjective complaints rather than any objectively verifiable conditions. Had the ALJ found Plaintiff to be credible, the headache diaries would support her claim that the episodes of migraines equals the requirement needed for Listing 11.02B. [R. 310-327]. The ALJ, however, concluded that Plaintiff's reports were not reliable. [R. 25]. The court finds that the ALJ provided a specific rationale for finding Plaintiff's impairments did not meet Listing 11.02B and substantial evidence supports the ALJ's determination.

## Medical Source Opinions

Plaintiff argues that the ALJ failed to properly consider the opinions of treating physicians, Zane DeLaughter, D.O., and neurologist, Yoon-Hee Cha, M.D. Plaintiff

---

[6] The court is cognizant that Plaintiff received treatment from neurologist, Dr. Yoon-Hee Cha.

9

contends the ALJ failed to give a legitimate reason for not giving Drs. DeLaughter and Cha's opinions deference to which they are entitled. [Dkt. 13, p. 10-12]. A treating physician's opinion is accorded controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. However, if the opinion is deficient in either of these respects, it is not given controlling weight. When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth specific, legitimate reasons for his decision. An ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Watkins v. Barnhart,* 350 F.3d, 1297, 2003 WL 22855009 (10th Cir. 2003). If the ALJ decides that a treating source's opinion is not entitled to controlling weight, he must determine the weight it should be given after considering: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the treating source's opinion is supported by objective evidence; (4) whether the opinion is consistent with the record as a whole; (5) whether or not the treating source is a specialist in the area upon which an opinion is given; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. See 20 C.F.R. § 404.1527(d)(2)-(6).

Plaintiff treated with Dr. DeLaughter from May 2, 2013 through September 10, 2015. The ALJ noted the records reflected Plaintiff complained of headaches numerous times despite taking numerous medications. Physical examinations revealed few objective abnormalities. [R. 21, 382-468, 498-515, 649-680]. Dr. DeLaughter completed a *Medical*

*Source Opinion Reference Headache Disorder* on April 21, 2015 opining that Plaintiff suffers from headaches three times per week which last greater than four hours. Dr. DeLaughter noted Plaintiff's headaches were debilitating and caused symptoms of nausea, vomiting, blurred vision, vertigo, phantom odors, and sensitivity to light and noise. Further, no anatomical reason for the headaches had been found. [R. 514].

Plaintiff sought treatment with neurologist Dr. Cha in May 2017. Plaintiff reported she suffered from headaches beginning in 2010. Plaintiff indicated her headaches can worsen and become migraine headaches associated with visual aura; light, sound, and smell sensitivity; nausea and vomiting; and episodes of vertigo lasting a couple of minutes to hours. Dr. Cha performed a physical examination and noted that Plaintiff's neck was full and tender, skull base tenderness, tenderness in her shoulders, and paresthesias in her hands when shoulders were extended. Dr. Cha noted Plaintiff's November 2016 VNG showed normal caloric responses but prolonged saccadic latencies. The remainder of his physical examination was normal. Dr. Cha opined Plaintiff suffered from possible thoracic outlet syndrome. Medication was prescribed. [R. 1060-1067].

Plaintiff returned to Dr. Cha in June 2017 reporting she had approximately ten headaches since the last visit. No examination was performed. A chest CT with contrast was scheduled for June 12, 2017. On June 21, 2017, Dr. Cha completed a *Medical Source Opinion Migraine Headache Disorder* indicating that Plaintiff had daily migraine headaches that were all day in duration despite prescribed treatment. Dr. Cha opined that the anatomical reason for the migraine headaches was venous congestion under evaluation and that Plaintiff was seeing a vascular surgeon for intervention. [R. 1081].

The ALJ did not give controlling weight to Drs. DeLaughter or Cha because both

opinions were clearly based on Plaintiff's self-report rather than objective signs or testing. Further, the ALJ stated Plaintiff had made contradictory statements about her alleged symptoms for which no objective cause could be found. What Plaintiff reported to the doctors cannot be regarded as reliable. Thus, their opinions are not based upon reliable information. [R. 25].

The responsibility for determining the weight of the evidence rests with the ALJ. The record supports the ALJ's findings that the evidence was inconsistent with Drs. DeLaughter and Cha's opinions about Plaintiff's limitations. Plaintiff is essentially dissatisfied with the weight given the evidence by the ALJ and is asking the court to reweigh the evidence. This it cannot do. "[W]e will not reweigh the evidence or substitute our judgment for the Commissioner's." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (quotation omitted). The evidence relied upon by the ALJ is evidence a reasonable mind could accept as adequate to support a conclusion, and the evidence relied upon by the ALJ is not overwhelmed by other record evidence. The court finds no error in the ALJ's treatment of Drs. DeLaughter and Cha's opinions.

### RFC Assessment

Plaintiff argues that the ALJ's finding that her migraine headaches were not severe is not supported by substantial evidence. At Step 2 of the evaluative sequence, the ALJ must determine whether Plaintiff suffers from severe impairments. That is all that is required of the ALJ at Step 2. *Oldham v. Astrue,* 509 F.3d 1254, 1256 (10th Cir. 2007). Once an ALJ finds that a claimant has at least one severe impairment, a failure to designate others as "severe" at Step 2 does not constitute reversible error because, under the regulations, the agency at later steps "consider[s] the combined effect of all of [the

12

claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1521, 416.921; *see also* 20 C.F.R. §§ 404.1525(e), 416.945(e); *Mariaz v. Sec'y of Health & Human Servs.,* 857 F.2d 240, 244 (6th Cir. 1987), *Brescia v. Astrue,* 287 Fed. Appx. 616, 629 (10th Cir. 2008). The ALJ's decision demonstrates he considered all of Plaintiff's alleged impairments. Thus, the court finds no error in the ALJ's findings at Step 2.

Plaintiff also argues that the ALJ'S RFC assessment does not allow for Plaintiff to consistently miss work. [Dkt. 13, p. 13-14]. In making the RFC assessment, an ALJ considers how an impairment, and any related symptoms, may cause physical and mental limitations that affect what a claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1). The RFC represents "the most [a claimant] can still do despite [her] limitations." *Id.* Plaintiff''s Step 4 argument regarding her headaches also fails. While an ALJ must consider the limiting effects of non-severe impairments in determining the claimant's RFC, 20 C.F.R. § 404.1545(e), it is clear the ALJ considered Plaintiff's headaches noting that because she could not be regarded as a reliable historian, it could be concluded that she does not suffer from migraine headaches to the extent alleged. The ALJ discussed Plaintiff's treatment for migraine headaches and concluded the record contains no objective clinical signs or medical findings that would result in any significant limitation that would prevent Plaintiff from working. Accordingly, the court finds that the ALJ did not err in assessing Plaintiff's RFC.

## **CONCLUSION**

The court finds that the ALJ evaluated the record in accordance with the legal

standards established by the Commissioner and the courts.  The court further finds there is substantial evidence in the record to support the ALJ's decision.  Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 18th day of September, 2019.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE